# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA *ex rel.*
CLARENCE CHRISTIANSEN and
THE STATE OF WISCONSIN,

          Plaintiffs,

v.

THE HEALING CORNER, LLC and
DR. SIAMAK B. ARASSI,

          Defendants.

Case No. 19-CV-1791-JPS

**ORDER**

## 1.     INTRODUCTION

On December 6, 2019, Relator Clarence Christiansen ("Relator") filed this action under seal, alleging Defendant The Healing Corner, LLC violated the False Claims Act, 31 U.S.C. § 3279 *et seq.*, by submitting falsified claims to Medicaid for reimbursement of substance abuse treatments. ECF No. 1. The United States filed a notice of intervention on May 18, 2022 and the case was unsealed. ECF Nos. 24–26. The United States filed its complaint in intervention—the operative complaint in this matter, *see United States v. HealthNet, Inc.*, No. 119CV04258JRSDML, 2021 WL 4477889, at *7 (S.D. Ind. Sept. 30, 2021)—on September 28, 2022. ECF No. 30. The State of Wisconsin was permitted to intervene in this action on September 30, 2022. ECF No. 36. The United States and the State of Wisconsin will be collectively referred to in this Order as the "Intervening Plaintiffs."

Presently before the Court is Intervening Plaintiffs' renewed motion for entry of default judgment against Defendants, filed on January 10, 2023.

ECF No. 51. For the reasons stated below, the motion will be granted, and the Court will assess damages in the amount of $2,346,545.78.

## 2. FACTUAL BACKGROUND

### 2.1 Allegations in the Complaint

The complaint in intervention lists as Defendants both The Healing Corner, LLC and Dr. Siamak Arassi (collectively, "Defendants"). ECF No. 30 at 1. The Healing Corner was a substance abuse treatment clinic located in Brookfield, Wisconsin, and provided treatment for opioid dependency, counseling, and medication management to Medicaid beneficiaries. *Id.* at 2–3. Dr. Arassi was the CEO and registered agent of The Healing Corner, was the "sole physician" operating the clinic, and "oversaw [its] day-to-day operations[.]" *Id.* at 2.[1]

From 2015 to 2017, Defendants submitted or caused claims to be submitted to the Wisconsin Medicaid Program[2] for reimbursement of the prescription medication Vivitrol and of Naltrexone, the generic equivalent of Vivitrol. *Id.* at 9. Vivitrol and Naltrexone are injectable medicines used to treat alcohol dependence and to prevent relapse to opioid dependence after detoxification. *Id.* These medications must be administered by a healthcare professional; the healthcare professional may either obtain the medication by sending in a prescription for it to a pharmacy, which then directly delivers the drug to the prescriber's office, or may directly obtain the medication from the manufacturer. *Id.*

---

[1]Dr. Arassi's wife at the time of the relevant events, Fatemeh Arassi, wholly owned The Healing Corner, but is not named as a defendant and is not a party to this action. ECF No. 30 at 3.

[2]The Wisconsin Medicaid Program covers many medical costs, including the cost of certain prescriptions, for low-income individuals and certain disabled individuals, and is jointly funded by the United States and the state government. *Id.* at 4–5.

According to the complaint in intervention, Defendants, from 2015 to 2017, routinely caused claims to be submitted to Medicaid for reimbursement of Vivitrol treatments which were never actually administered to Medicaid patients. Specifically, Defendants would submit Vivitrol prescriptions and refill requests to Good Value Pharmacy, LLC d/b/a Prescriptions Plus ("Prescriptions Plus"),[3] which fulfilled the prescriptions by delivering the medication to The Healing Corner. *Id.* at 10–11. Prescriptions Plus billed the patients' insurance providers, including Wisconsin Medicaid, for the medication; Wisconsin Medicaid reimbursed Prescriptions Plus approximately $1,300.00 per Vivitrol treatment. *Id.* at 9–10.

However, some portion of these Vivitrol prescriptions were for individuals who were no longer patients at The Healing Corner at the time the orders were submitted. *Id.* at 12–16 (describing three such patients). The complaint in intervention alleges that Defendants stockpiled the Vivitrol prescribed for but not administered to Medicaid patients, and instead administered it to patients who paid cash. *Id.* at 17–18. It also alleges that the Healing Corner obtained free samples of Vivitrol from the drug manufacturer, administered them to Medicaid patients, and then billed Wisconsin Medicaid for Vivitrol or Naltrexone. *Id.* at 16–17 (describing two such patients).

Defendants had a duty to submit claims to Medicaid that were accurate, truthful, and in compliance with applicable rules and regulations. *Id.* at 18. Dr. Arassi himself authorized the submission of at least 47 Vivitrol orders to Prescriptions Plus, at least 14 of which were for individuals who were no longer patients of The Healing Corner. *Id.* at 19. Dr. Arassi also

---

[3]Prescriptions Plus is not a defendant in nor a party to this action.

instructed at least one staff member of The Healing Corner to continue to request refills from Prescriptions Plus regardless of a patient's current status at the clinic.

The complaint alleges Defendants' conduct violated the federal False Claims Act as well as the Wisconsin False Claims Statute, Wis. Stat. § 49.485.[4] *Id.* at 19–20.

## 2.2 Procedural Background

Defendants were served with the Intervening Plaintiffs' complaint on October 3, 2022. ECF Nos. 39–40.[5] Defendants did not formally appear or otherwise defend this action within the time provided by the Federal Rules of Civil Procedure. Consequently, the Clerk of the Court, upon Intervening Plaintiffs' application, entered default against Defendants on November 4, 2022.

The Intervening Plaintiffs initially filed for default judgment on December 1, 2022, ECF No. 45, but the Court denied that motion without prejudice because it was not clear whether service of the moving papers on Defendants was required and, if required, whether service was completed. ECF No. 49. Intervening Plaintiffs have certified that they served the present motion for default judgment on Defendants, using the previously-approved alternative method of service by email. ECF No. 51-1.

## 3. DEFENDANTS' RESPONSE TO THE MOTION

The Court cannot, strictly speaking, treat the motion as unopposed, because Defendant Arassi responded by email to the United States on the

---

[4]The United States' complaint in intervention also lists a claim that Defendants violated the Wisconsin Medical Assistance Fraud Statute, Wis. Stat. § 49.49(4m), and a claim of unjust enrichment. ECF No. 30 at 20–22.

[5]Intervening Plaintiffs were permitted to serve Defendants by email. ECF No. 37.

Page 4 of 11
Case 2:19-cv-01791-JPS   Filed 02/28/23   Page 4 of 11   Document 55

same day it filed and served the default judgment motion, and the United States brought this response to the Court's attention. ECF No. 54. Arassi's email indicates he opposes the default judgment motion because he "was deprived of representing [him]self via remote sessions since [he] was not in the country" and that, when he alerted the "previous [d]istrict attorney" to his lack of legal representation, she did not reply. ECF No. 54-1 at 1. Arassi "demands to have a hearing and defence [sic] on the case" before the Court entertains the motion for default judgment. *Id.* The United States represents that it informed Arassi, in a response email, that he had to submit any responsive filing to the Court directly. ECF No. 54. Neither Defendant ever filed any formal opposition brief as contemplated by Civil Local Rule 7(b), or any other filing that can be construed as opposition.

To the extent Arassi's email response to the United States can be construed as Defendants' opposition to the motion for default judgment, it is unpersuasive because it sets forth no "facts which would support a meritorious defense of the action by the non-moving party." *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) (citing *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990)). It fails to articulate anything more than a "general denial" of the allegations against Defendants. *Id.* (quoting *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982).

Arassi's demand for a hearing and defense is noted, but comes too late. As the Court observed in its previous order, it appears Defendants were previously represented, and had participated, through counsel, in settlement negotiations with all Plaintiffs, even arriving at a settlement in

principle. ECF No. 29 at 2, n.2; *see also* ECF No. 33 at 2.[6] However, those settlement negotiations, and at some point the relationship between Defendants and their attorney, came to an end. ECF No. 33 at 2. Subsequently the United States filed its complaint in intervention, which was served on Defendants via the alternative service method authorized by Magistrate Judge Joseph, and Defendants had an opportunity to answer or file a motion to dismiss. ECF Nos. 30, 39, 40.

Defendants failed at every turn both to defend this case and, when their prior attorneys ceased representing them, to retain new representation despite having months to do so. *See Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1229–30 (7th Cir. 1983) (affirming dismissal for failure to prosecute where plaintiff, among other missteps, failed to retain counsel after being twice instructed to do so by the district court, and further failed to provide a satisfactory explanation as to why he was unable to retain an attorney). Under these circumstances, the Court finds that Defendants have not presented any persuasive opposition to the motion for default judgment that would preclude the Court from now rendering a definitive ruling on the merits of that motion.

4. **MOTION FOR DEFAULT JUDGMENT**

    4.1 **Legal Standard**

Upon entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Intern., Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (internal citation and quotation marks omitted). "Accepting those facts as true, a court must determine

---

[6]The Court may take judicial notice of its own docket. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994). Although the case was previously sealed, the cited filings are part of the public record of this case since it was unsealed.

whether those facts establish that the plaintiff is entitled to the relief it seeks." *Cree, Inc. v. BHP Energy Mex. S. de R.L. de C.V.*, 335 F. Supp. 3d 1105, 1111 (E.D. Wis. 2018) (internal citation omitted). If they do, the Court may, in its discretion, grant default judgment to the movant. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014).

Even if default judgment is granted, a plaintiff nevertheless bears the responsibility to prove up its damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citations and quotations omitted). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.*

### 4.2 Liability

The False Claims Act provides, in part, that any entity that (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval is liable to the United States for damages and penalties. 31 U.S.C. § 3279(a)(1)(A). "Knowingly," for purposes of this statute, means "that a person, with respect to information[,]" either "has actual knowledge of the information; . . . acts in deliberate ignorance of the truth or falsity of the information; or . . . acts in reckless disregard of the truth or falsity of the information[.]" 31 U.S.C. § 3279(b)(1). No proof of specific intent to defraud is required. *Id.* The Wisconsin False Claims Statute, similarly, provides that "[w]hoever knowingly presents or causes

to be presented to any officer, employee, or agent of this state a false claim for medical assistance shall" be liable for penalties and damages arising from the false claim. Wis. Stat. § 49.485.

Due to the entry of default in this case, the Court accepts as true the allegations laid out in the complaint in intervention, ECF No. 30, and summarized *supra* Section 2.1. Further, these allegations demonstrate that Defendants knowingly submitted or caused to be submitted false claims for payment to Wisconsin Medicaid seeking reimbursement for Vivitrol that was medically unnecessary and/or never administered to the patients for whom it was prescribed, and knowingly submitted or caused to be submitted false claims for payment to Wisconsin Medicaid seeking reimbursement for treatments that Defendants had received for free from the drug manufacturer. Intervening Plaintiffs are therefore entitled to relief. Accordingly, the Court finds it appropriate to grant the motion for default judgment, *see Domanus*, 742 F.3d at 301, and will turn to the question of damages.

### 4.3   Damages

Any person who presents or causes to be preserved a false claim to the United States, in violation of the False Claims Act, is liable for three times the amount of damages that the government sustains, plus penalties for each false claim. 31 U.S.C. § 3279(a)(1). The penalty for a False Claims Act violation committed before November 2, 2015 ranges from $5,500.00 to $11,000.00; the penalty for such a violation committed after November 2, 2015 ranges from $12,537.00 to $25,076.00. *Id.*; 28 C.F.R. § 85.5. Similarly, for each violation of the Wisconsin False Claims Statute, the State of Wisconsin is entitled to recover a forfeiture of $5,000.00 to $10,000.00 plus three times

the amount of damages the State did sustain or would have sustained as a result of each false claim. Wis. Stat. § 49.485.

Intervening Plaintiffs seek $2,346,545.78, which is equal to treble the amount of damages that—based on the United States' extrapolation analysis—were the result of false and fraudulent claims that Defendants caused to be paid by Medicaid. ECF No. 52 at 5. Intervening Plaintiffs do not, in this motion, seek per-violation monetary penalties. *See id.*

By way of substantiating this figure, Intervening Plaintiffs state the following:

> Pursuant to a Civil Investigative Demand issued by the Office of the United States Attorney for the Eastern District of Wisconsin, Healing Corner produced medical records for 31 patients who received Vivitrol treatment at Healing Corner between 2015 and 2017. *See* Declaration of Laurie Thompson [ECF No. 53] at [¶] 4. The total amount paid by Medicaid for Vivitrol or Naltrexone for those 31 patients between 2015 and 2017 was $344,278.67, which represents approximately 22% of the $1,564,363.85 total Medicaid paid for Vivitrol or Naltrexone ordered by Healing Corner in that time period. *Id.* at ¶ 6. Government investigators analyzed the medical records in detail, in conjunction with Wisconsin Medicaid billing data and documents produced by Prescriptions Plus, to compare the injections ordered for each patient by Healing Corner with the number administered to each patient per the medical record. *Id.* at ¶ 7. Investigators also noted instances in which Healing Corner used free samples but billed, or caused the submission of billing to, Medicaid regardless. *Id.* Using this method, government investigators determined that $170,917.90 of the $344,278.67 was fraudulent, amounting to 50% of the Vivitrol and Naltrexone claims for the 31 patients reviewed. *Id.* at ¶ 8.

*Id.* at 3. Extrapolating from the 31-patient sample and assuming that 50% of *all* of The Healing Corner's Medicaid billing of Vivitrol and Naltrexone in 2015 to 2017 was fraudulent or falsified, Intervening Plaintiffs aver that

Page 9 of 11
Case 2:19-cv-01791-JPS   Filed 02/28/23   Page 9 of 11   Document 55

Medicaid overpaid The Healing Corner $782,181.93 for the medications in this time period. *Id.* at 4. Three times this overpayment is $2,346,545.78. *Id.* at 5.

Intervening Plaintiffs acknowledge this figure is speculative, but, in addition to arguing their methodology is sound, point out that Dr. Arassi "shut down Healing Corner and fled the country" during the course of this litigation, preventing the United States from requesting all relevant patient records through normal discovery. ECF No. 52 at 5 (citing prior emails from Dr. Arassi). They further argue that this figure, speculative as it may be, is still appropriate because it "represents a fraction of the judgment authorized" by the False Claims Act, the Wisconsin False Claims Statute, and their per-violation penalty and treble damages provisions. *Id.*[7]

The Court finds the $2,346,545.78 is acceptably "ascertain[able] from definite figures contained in the documentary evidence or in detailed affidavits[.]" *e360 Insight*, 500 F.3d at 602. Moreover, where "defendants' misconduct prevent[s] the plaintiffs from calculating damages accurately . . . damages can be estimated by methods that would be deemed impermissibly speculative in other contexts." *BCS Servs., Inc. v. BG Inv., Inc.*, 728 F.3d 633, 639–40 (7th Cir. 2013). Based on what *is* known from the 31 patients' records, considered in light of Defendants' conduct during the course of this litigation, the Court is persuaded that the 31-patient sample is sufficiently representative of the probable overall rate of fraudulent billing and is an appropriate basis to calculate the total damages to

---

[7] Intervening Plaintiffs have not specified what the denominator of this fraction—i.e., the scope of the potentially authorized judgment—might be. Such a figure would require the number and timing of each false claim to be determined, neither of which is known. This figure is not necessary to the Court's final analysis. But the Court parenthetically cautions Intervening Plaintiffs against relying on such assertions without some kind of numerical backing.

Intervening Plaintiffs. The Court will therefore order a damages award of $2,346,545.78.[8]

Accordingly,

**IT IS ORDERED** that Intervening Plaintiffs the United States' and the State of Wisconsin's motion for default judgment, ECF No. 51, be and the same is hereby **GRANTED**; Defendants The Healing Corner, LLC and Dr. Siamak Arassi shall be jointly and severally liable to Intervening Plaintiffs for damages in the amount of $2,346,545.78; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

---

[8] Intervening Plaintiffs seek final judgment, ECF No. 52 at 6, and their moving papers focus on the violations alleged in Counts One and Two of the complaint in intervention. Accordingly, Counts Three (for violations of the Wisconsin Medical Assistance Fraud Statute) and Four (unjust enrichment) in the complaint in intervention, on which Intervening Plaintiffs sought no damages, will stand dismissed along with the rest of this case. ECF No. 30 at 20–22.